# EXHIBIT A

**(Executed Letter of Intent)**

EAST\174098898

**CWI Logistics, LLC**
c/o Mark Bostick
**Lake Wales, Florida**

May 17, 2020

**VIA EMAIL**
Mr. Billy Hart
Blue Jay Advisors

Dear Billy:

We are pleased to submit this letter of intent ("Letter") pursuant to which CWI Logistics, LLC ("Buyer"), an affiliate of Commercial Warehousing, Inc. ("CWI"), would acquire the business and operating assets of CCC, the business and operating assets of CTTS Repairs, and the potential for certain real estate situated in Auburndale, FL described below (the "Real Estate") owned by Comcar Industries, Inc. or a subsidiary, as Debtors and Debtors in Possession in proceedings for reorganization under Chapter 11 of the Bankruptcy Code (as applicable, "Comcar") and would settle and compromise all disputes and claims between the parties. Our interest in such transaction (the "Possible Transaction") is based on the limited financial and other information available to date and is subject in all respects to usual and customary legal, financial, accounting, business, tax, and other due diligence, the consents of relevant third parties, to the extent required by applicable law, and mutually agreed definitive transaction documentation.

The purpose of this Letter is to set forth certain nonbinding understandings and certain binding agreements between Comcar and Buyer with respect to the Possible Transaction. Except with respect to the terms of Part Two, which are binding (collectively, the "Binding Provisions"), this Letter is nonbinding, and any and all obligations or commitments to proceed with the Possible Transaction, including the payment of the Purchase Price (as defined below), will be contained only in a subsequent definitive agreement by and between Comcar and Buyer or an affiliated entity of Buyer (the "Definitive Agreement") and such other agreements and documents as the parties may execute. Following are the major terms, conditions, and timeline on which we would like to proceed with the Possible Transaction:

**PART ONE**

**Nature of the Transaction:** The Possible Transaction would consist of an acquisition of specified business assets used primarily in the business of CCC and CTTS Repairs and the settlement and compromise of claims and disputes between the parties. All Purchased Assets are to be sold free and clear of all liens, claims and encumbrances. The sale portion of the Possible Transaction shall be conducted as a direct sale to Buyer without an auction or bidding process but will be subject to Court approval at the Approval Hearing after notice and an opportunity for interested parties to file objections, which may include competing offers to acquire the assets described below.

    a. Buyer would acquire the following:

        i. the business and operating assets primarily used in the business of CCC

Comcar Industries Inc.
May 17, 2020
Page 2

      (regardless of which corporate entity is shown as the owner of such assets on the consolidating balance sheets), including without limitation, (A) assumption of the CWI Equipment Lease pertaining only to the CWI/CCC Trailers leased from CWI and used in CCC's business (as listed on Exhibit A, the "<u>CWI/CCC Trailers</u>"), and no other trailers, (B) the right to negotiate ongoing leases of any or all of (1) approximately 34 day cab and sleeper tractors (but no spotters) used in CCC's business under non-month to month leases (the "<u>Assumed Tractors</u>") (if applicable, the balance of such lease(s) will be rejected effective no later than closing in order to minimize exposure to the estates), and (2) the month-to-month leased tractors (the "<u>Rental Tractors</u>") (if applicable, the balance of such lease(s) will be rejected effective no later than closing in order to minimize exposure to the estates), in each case on terms to be negotiated with the lessor thereof (actual number to depend on the number of drivers who qualify for employment with Buyer once the applicable records, subject to protections of personally identifiable information, are available for diligence and the willingness of lessors to enter into new or assigned lease agreements on acceptable terms; provided, however, Comcar will not be obligated or pay any cure or buy-out in connection therewith), and (C) the other miscellaneous assets used primarily in the business, including without limitation, parts, tools, inventory, intangibles (customer lists and information, phone and fax numbers, websites, goodwill, URLs, employee and independent contractor files and contracts, and all other IP), FF&E, and certain prepaid and other current assets that are aligned with operations, but not accounts receivable or other working capital assets ("<u>Miscellaneous Assets</u>");

  ii.  the business and operating assets primarily used in the business of CTTS Repairs (regardless of which corporate entity is shown as the owner of such assets on the consolidating balance sheets), as conducted from its three locations, including without limitation its Miscellaneous Assets; and

  iii.  the three parcels of Auburndale Real Estate owned by Comcar, commonly known as (x) 502, 548 Bridgers Ave., and 509 U.S. 92, (y) Charlotte Ave., and (z) 306 Old Winter Haven Rd. (and for clarity, excluding SEC US Hwy 92 & Charlotte Rd. Auburndale, FL 3382, the 45-acre undeveloped parcel).

The assets above would be free and clear of liens, encumbrances, and liabilities except for post-closing liabilities arising under leases relating to the Assumed Tractors. In addition, Comcar would provide documentation at closing of its payment of all payroll, relating to the employees of CCC and CTTS Repairs to whom Buyer intends to offer employment. All other liabilities, including but not limited to, accrued claims, unrecorded or contingent liabilities, unfunded employee benefits, severance, or similar liabilities, environmental liabilities, and litigation cases, tax liabilities, etc., will be retained by Comcar. For clarity, cash and accounts receivable and other working capital assets would not be included in the transaction, but would be retained by Seller. Buyer will be solely responsible for all cure costs associated with any

Comcar Industries Inc.
May 17, 2020
Page 3

    contract assumed by the Buyer.[1]

    b. In exchange, Buyer, CWI, and Bostick would offer the following consideration:

        i. assumption of all liabilities under Comcar's lease of the CWI/CCC Trailers;
        ii. transfer of all of CWI's right, title, and interest in and to the trailers leased to Comcar by CWI and used in the CTL business ("CWI/CTL Trailers");[2]
        iii. assumption of all monthly lease obligations for periods after closing under Comcar's lease of the Assumed Tractors and Rental Tractors, or the leases for such tractors shall be designated by Buyer as leases to be rejected by Comcar; and
        iv. commitment by Buyer to offer comparable employment to a substantial number of the employees of CCC and CTTS Repair and certain agreed upon employees of Comcar situated in Auburndale, with a view of avoiding WARN Act notification requirements and effecting a reduction of Comcar's liability for severance, and other payroll related to employees to whom Buyer offers employment.

    c. Buyer would review the employment records of all drivers and non-driving employees, subject to protection of personally identifiable information, and make offers to those meeting its needs (taking into consideration the commitment in 1.b.iv. above) and hiring standards.

    d. It is expected that most non-driving employees in the Auburndale location would be offered employment, along with certain CTTS Repairs employees in Tampa and Orlando.

2. **Releases**:

    a. **CWI-Bostick/Comcar.** CWI and affiliates and respective representatives and Bostick in the first instance; Comcar entities and representatives in the second instance:

i) Consent to the transactions concerning CTL, CT and MCT, however, preserve right to submit higher or otherwise better offer;
ii) Dismissal with prejudice of pending litigation;
iii) Covenant not to sue;
iv) Mutual global releases of all claims that now exist or may hereafter arise, except only:
   (1) Bostick's rights to indemnification as a D&O of Comcar entities,

---

[1] Buyer does not anticipate assuming any contracts that have other than de minimis cure costs. Accordingly, provision should be made to connect Buyer with the counterparties to any material contracts to enable discussions concerning the terms of assumption, if any.

[2] CWI acknowledges that the closing of the transactions contemplated by this Letter, including the acquisition of the assets described under Section 1.a above, will satisfy CWI's lease and equipment secured claim as to all trailers leased to Comcar by CWI.

EAST\174242405.1

Comcar Industries Inc.
May 17, 2020
Page 4

    (2) CWI's contract claims under CWI-owned real estate leases for postpetition unpaid rent and enforcement of lease provisions,
    (3) Comcar's right to enforce the terms and rights under the Definitive Agreements (as defined below),
    (4) CWI's right to enforce the terms and rights under the Definitive Agreements, including right to CWI/CCC trailers under CWI Equipment Lease or value (agreed to or as determined by the Court) of such trailers if CCC sold to a party submitting a higher or otherwise better offer approved by the Court,
  v) Surrender of stock and waiver of claims as a shareholder; and
  vi) Waiver of claims in respect of actions and omissions to be taken in the bankruptcy cases.

    b. **CWI-Bostick/FIE.** CWI and affiliates and respective representatives and Bostick in the first instance; FIE and its affiliates and representatives in the second instance:
        (i) All litigation dismissed with prejudice;
        (ii) Covenant not to sue;
        (iii) Mutual global releases of all claims that now exist or may hereafter arise, except only:
          1. CWI defenses to foreclosure sounding only in real estate and foreclosure, which shall be limited to the right of redemption,
          2. FIE's claims and liens against Comcar assets and CWI and its affiliates assets under prepetition documents,
          3. FIE's claims and liens as DIP Agent and DP Lender,
          4. FIE consent to release lien on Auburndale Real Estate;
          5. FIE agreement to marshal against Comcar assets first including Comcar real estate with consent to CCC/CTTS Repairs transaction (Bostick would receive first value of Auburndale real estate free and clear, and last any equity in Comcar/CWI real estate after FIE claims paid in full and liens satisfied) FIE would agree not to commence foreclosure until after the earlier of (a) conclusion of the bankruptcy case and (b) 6 months following the petition date; and
        (iv) Waiver of claims against FIE in respect of actions and omissions to be taken in the bankruptcy cases.

3. **Conditions and Approvals:** To complete the Possible Transaction, we would require the following conditions and approvals to be satisfied, among others:

    (a) to the extent required by applicable law, counterparties to relevant contracts (other than Buyer/CWI) consent to Buyer's assumption of post-closing obligations under such contracts or such contracts are transferred by court order [Buyer to be solely responsible for all cure costs associated with any contract it agrees to assume.];
    (b) taking into consideration the commitment in 1.b.iv. above, subject to protection of employee confidential personally identifiable information, Comcar affords Buyer and its insurance carrier prompt access to all employees and independent contractors and their files in order for Buyer to determine (i) how many Assumed Tractors and Rental

EAST\174242405.1

Comcar Industries Inc.
May 17, 2020
Page 5

    Tractors to negotiate to obtain, and which of such individuals will qualify to hire or contract with and to be able to have the hiring and contracting completed, and equipment leases and insurance in place, at closing;

    (c) a satisfactory mutual transition services agreement concerning (i) any shared services provided by other Comcar entities and (ii) by CCC/CTTS and Comcar Auburndale employees hired by Buyer to the other Comcar entities and their successors and assigns;

    (d) the right on an absolute net lease basis to operate from the Tampa CTTS Repairs facility, in each case to the extent reasonably required to ensure the smooth transition of the business for up to 60 days rent free and thereafter Buyer shall pay a monthly market rental rate on a month to month basis, terminable with 30 day's prior written by either party, rent to be paid in advance;

    (e) tractors and trailers will be conveyed in as is – where is condition, with no representations or warrantires of any kind or nature;

    (f) Comcar and Buyer shall have negotiated satisfactory release provisions with Center State Bank, and the collateral agent for B2 FIE VIII LLC ("FIE"), or FIE if the holder of record, shall have released its second mortgage, to permit the Auburndale Real Estate to be delivered free and clear of all liens and encumbrances (other than customary title exceptions as shown on a title commitment to be obtained by Buyer prior to closing), title to be transferred with Buyer paying all taxes and title, and subject to customary utility prorations;

    (g) the Bankruptcy Court shall have entered a final order pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing the transactions described herein and transferring the subject assets free and clear of all liens, finality of the order may be waived and closing may proceed so long as the order is not stayed;

    (h) CCC and CTTS Repairs continue to operate in the ordinary course of business, giving effect to the current circumstances surrounding the COVID-19 pandemic and the bankruptcy process;

    (i) the sale of CTL shall have been completed and Comcar shall have received gross proceeds of at least $9 million (or such lesser amount as Comcar may approve in its sole discretion), which condition is waivable by Comcar in its sole discretion; and

    (j) definitive agreements reflecting the matters set forth in paragraph 2.b. hereof shall have been executed and delivered.

4. **Due Diligence:** We expect Comcar will afford Buyer and its representatives and financing sources reasonable and customary access to its personnel, attorneys, accountants, properties, contracts, customers, books and records. As priority matters, and without limitation, promptly after the execution of this Letter: (i) our accounts receivable financing provider would need access (at reasonable times and places and without undue impact on operations) to relevant records and personnel to be able to include accounts receivable generated from and after the closing in the facility promptly following closing, (ii) subject to protection of personably identifiable information, our insurance provider will need access to claims, safety and driver records and personnel for us to be able to hire the drivers, (iii) our representatives will need access (at reasonable times and places and without undue impact on operations) to the

Comcar Industries Inc.
May 17, 2020
Page 6

    CWI/CCC Trailers, and any tractors that may become Assumed Tractors or Rental Tractors, and to related inspection reports, maintenance records, and leases, as well as contact information of lessors and an introduction/authorization for contacts at the lessors to deal with Buyer's representatives, and (iv) our representatives will need access (at reasonable times and places and without undue impact on operations) to IT, administrative, maintenance, and operations personnel to plan the cutover at closing and understand the nature of transition services that may be required or required to be provided to Comcar.

5. **Terms of Definitive Agreements:** The Parties shall in good faith negotiate definitive, legally binding subject to court approval, written agreements reflecting the structure, final configuration, and binding terms and conditions applicable to the Transaction, including without limitation: a purchase and sale agreement (the "PSA"), and any other related agreements necessary to address the other matters described in this Letter (collectively, the "Definitive Agreements"). It is anticipated that the Definitive Agreements will contain usual and customary bankruptcy sale (as is-where is) representations, warranties, covenants, and choice of law provisions. If the PSA is executed and is subsequently terminated by Comcar in connection with receipt of a superior proposal, the PSA shall provide that Buyer shall be entitled to expense reimbursement capped at $150,000 for Buyer's actual reasonable documented out of pocket expenses relating to the Possible Transaction, payable solely from the proceeds derived from closing of such alternative transaction. Comcar's right to terminate the PSA in connection with a superior proposal will be conditioned on payment of the expense reimbursement to Buyer from closing proceeds of such alternative transaction.

**PART TWO**

    The following paragraphs of this Letter are the legally binding and enforceable agreements of the parties.

6. **Expenses:** Except as set forth in paragraph 5 of this Letter or as may be set forth in a definitive agreement executed and delivered by the parties, each of the parties will be solely responsible for and bear all of its own respective expenses, including, without limitation, expenses of legal counsel, brokers, investment bankers, accountants, and other advisors, incurred at any time in connection with pursuing or consummating a definitive agreement and the transactions contemplated therein.

7. **Miscellaneous:** This Letter supersedes all prior communications, agreements and understandings, written or oral, with respect to any investment in Comcar by Buyer or its affiliates. This Letter may be signed in counterparts, all of which will constitute the same agreement, will be governed by the laws of the state of Delaware, and will bind and inure to the benefit of the parties and their respective successors and assigns. Buyer may assign its rights hereunder to any affiliate without the consent of any other party.

EAST\174242405.1

Comcar Industries, Inc.
May 17, 2020
Page 7

### ***SIGNATURE PAGE TO LETTER OF INTENT***

If the foregoing is acceptable to you, please sign this Letter in the space indicated below and return it to us.

Sincerely,

**CWI Logistics, LLC**

By: _____
Mark Bostick

**Comcar Industries, Inc.**

By: _____
Printed Name: _____
Title: _____

Made with Scanner for Me

Comcar Industries Inc.
May 17, 2020
Page 8

***SIGNATURE PAGE TO LETTER OF INTENT***

If the foregoing is acceptable to you, please sign this Letter in the space indicated below and return it to us.

Sincerely,

**CWI Logistics, LLC**

By: _____
Mark Bostick

**Comcar Industries, Inc.**

By: _____
Printed Name: _Andrew Hinkelman_
Title: _Chief Restructuring Officer_